UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :
UNITED STATES OF AMERICA,
                                    :
        - v. -                      :           **INFORMATION**
                                    :
DAVID BECKER,                                   06 Cr.
                                    :
                                    :
            Defendant.              :
                                    :
------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: SEP 1 4 2006

### COUNT ONE

### (Conspiracy)

The United States Attorney charges:

### Relevant Persons and Entities

1.    At all times relevant to this Information,
Citibank NA ("Citibank") was a national banking association with
its principal place of business in New York, New York.

2.    At all times relevant to this Information, DAVID
BECKER, the defendant, was employed by Citibank as the head of
its commodities trading desk ("Commodities Desk").  BECKER worked
at Citibank's offices in New York, New York and was responsible
for supervising its worldwide commodities trading activity.

3.    At all times relevant to this Information, a co-
conspirator not named as a defendant herein ("CC-1") was the head
of American sales and trading at the Commodities Desk and worked
at Citibank's offices in New York, New York.

## The Fraudulent Scheme

4.     From in or about 2003 through in or about January 2004, DAVID BECKER, the defendant, and others known and unknown, engaged in a scheme to falsify the reported financial performance of the Commodities Desk by inflating the trading profits and under-reporting the market risk of that desk in order to enhance BECKER'S apparent job performance and his eligibility for bonuses from Citibank.

5.     As a result of the scheme executed by DAVID BECKER, the defendant, and others, the Commodities Desk appeared to perform significantly better during 2003 than it actually performed.  For example, during late 2003, the Profit and Loss ("P&L") of the Commodities Desk was overvalued by approximately $20 million.

6.     DAVID BECKER, the defendant, and his co-conspirators overstated the financial performance of the Commodities Desk through a number of means, including the following:

a.     At all times relevant to this Information, the value of the financial positions, including various options contracts, held by the Commodities Desk was monitored through a computer model (the "Model").  The Model used various inputs, including the mathematical relationship or correlation between different commodity contract prices ("Correlations"), to

calculate the P&L, present value, risk exposure, and other performance measures of the Commodities Desk. Certain of these performance measures were provided to officers at Citibank and were included in Citibank's financial reporting. During October, November and December 2003, DAVID BECKER, the defendant, and CC-1 input false Correlations into the Model for certain options contracts held by the Commodities Desk. These Correlations were inconsistent with actual market rates, were inconsistent with Correlations input for other similar contracts held by the Commodities Desk, and resulted in a significant artificial increase in the P&L and present value reported for the Commodities Desk. In or about January 2004, after the end of Citibank's 2003 financial year and after questions had been raised about the accuracy of the Correlations, BECKER and CC-1 changed certain of the Correlations back to actual market levels.

b. At all times relevant to this information, traders on the Commodities Desk were able to test the value of positions that they were considering entering into by placing potential trades into a so-called "test portfolio" in the Model. The effect of such potential trades on the Commodities Desk could then be evaluated before actually executing the trade and moving it into the so-called "live portfolio." In or about late 2003, DAVID BECKER, the defendant, and CC-1 moved certain fictitious at-the-money or profitable option trades from the test portfolio

into the live portfolio just prior to month-end valuations of the Commodities Desk. After those month-end valuations were complete, BECKER and CC-1 moved those fictitious trades back to the test portfolio. Inclusion of these fictitious trades in the month-end valuation resulted in the reporting of reduced market risk and inflated P&L for the Commodities Desk.

c. At all times relevant to this Information, the financial control department at Citibank ("Financial Control") monitored the accuracy of financial information reported by the Commodities Desk. As part of that monitoring, Financial Control obtained quotes of market prices for commodity contracts from brokers who were independent of Citibank and compared those quotes to values provided by the Commodities Desk. In or about 2003 and January 2004, DAVID BECKER, the defendant, and CC-1 directed a broker (the "Broker") at an independent commodities brokerage firm located in Englewood, New Jersey to supply false market quotes to Financial Control in order to undermine its monitoring of the Commodities Desk. BECKER and CC-1, while located in New York, New York, supplied the Broker, located in New Jersey, with false market quotes over the telephone. The Broker, at the direction of BECKER and CC-1, then provided those false market quotes to Financial Control either through interstate facsimiles or telephone calls.

## Statutory Allegations

7.    From in or about 2003, up to and including in or about January 2004, in the Southern District of New York and elsewhere, DAVID BECKER, the defendant, and others known and unknown, unlawfully, wilfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit: (1) making false bank entries, in violation of Title 18, United States Code, Section 1005, and (2) wire fraud, in violation of Title 18, United States Code, Section 1343.

## Objects of the Conspiracy

8.    It was a part and an object of the conspiracy that DAVID BECKER, the defendant, and others known and unknown, being an officer, agent and employee of a bank insured by the Federal Deposit Insurance Corporation, to wit Citibank N.A., unlawfully, wilfully, and knowingly, would and did make false entries in a book, report and statement of such bank with intent to injure and defraud such bank and to deceive an officer of such bank, in violation of Title 18, United States Code, Section 1005.

9.    It was further a part and an object of the conspiracy that DAVID BECKER, the defendant, and others known and unknown, unlawfully, wilfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent

5

pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, pictures, signals, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Overt Acts

10.    In furtherance of the conspiracy and to effect the illegal objects thereof, DAVID BECKER, the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.    On or about October 8, 2003, CC-1 made changes to the Correlations for certain options held by the Commodities Desk that artificially inflated the present value of those options by approximately $2.25 million.

b.    On or about November 3, 2003, just prior to calculation of the October month-end report for the Commodities Desk, DAVID BECKER, the defendant, moved a fictitious trade from the test portfolio to the live portfolio, thereby increasing the P&L of the Commodities Desk by approximately $1.5 million.

c.    On or about November 4, 2003, just after calculation of the October month-end report for the Commodities Desk, CC-1 moved the fictitious trade described in paragraph 10b. above from the live portfolio to the test portfolio.

d.  On or about November 6, 2003, CC-1 provided market quotes to the Broker over the telephone.

e.  On or about December 30, 2003, CC-1 provided market quotes to the Broker over the telephone and discussed having the Broker fax those quotes to Financial Control on the Broker's letterhead.

f.  On or about December 31, 2003, DAVID BECKER, the defendant, made changes to the Correlations for certain options held by the Commodities Desk that artificially inflated the present value of those options by at least $2.7 million.

g.  On or about January 2, 2004, DAVID BECKER, the defendant, had a telephone conversation with the Broker during which they discussed sending "sheets" containing market quotes to Financial Control.

h.  From on or about January 26, 2004, through on or about January 29, 2004, CC-1 reset the Correlations discussed in paragraph 10f. back to their earlier levels.

(Title 18, United States Code, Section 371.)

## FORFEITURE ALLEGATION

11.  As the result of committing the offense of conspiracy in violation of Title 18, United States Code, Section 371 alleged in Count One of this Information, DAVID BECKER, the defendant, shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real

7

and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to the following:

a.    A sum of money equal to $200,000 in United States currency, representing the amount of proceeds obtained as a result of the offenses for which the defendant is liable.

### Substitute Assets Provision

b.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of DAVID BECKER, the defendant,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty; it is the intention of the United States, pursuant to Title 21, United States Code,

Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

(Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461; and Title 18, United States Code Sections 371, 1005, & 1343.)

_____

MICHAEL J. GARCIA *bg*
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v -

### DAVID BECKER,

**Defendant.**

### INFORMATION

06 Cr. \_\_\_\_\_

Title 18, United States Code, Section 371

<u>MICHAEL J. GARCIA</u>
United States Attorney.

---

9/26/06 AUSA waiver + information filed.
Deft arraigned on the information. Deft pres. w/atty. Dan
Horwitz , AUSA Jonathan Streeter pres. Court reporter
Joanne Moncari pres. Deft enters a plea of guilty
to the information. PSI Ordered. Sentencing set
for 1/26/07 @ 11:00 a.m. Deft ROR. ↑

Hellerstein, J.